Cherubino **VALSANGIACOMO,**
**Appellant,**

v.

**AMERICANA JUICE IMPORT,**
**INC., Appellee.**

No. 13–99–587–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 14, 2000.

David N. Calvillo, John G. Escamilla, Rodriguez, Pruneda, Tovar, Calvillo & Garcia, McAllen, for appellant.

Edward C. Snyder, Gerald T. Drought, Martin, Drought & Torres, Inc., San Antonio, Daniel G. Gurwitz, Lisa D. Powell, Atlas & Hall, L.L.P., McAllen, for appellee.

BEFORE: Chief Justice SEERDEN and Justices DORSEY and RODRIGUEZ.

## OPINION

RODRIGUEZ, Justice.

This is an appeal from the denial of a special appearance. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2000). We reverse and dismiss the cause for lack of personal jurisdiction.

Americana Juice Import (Americana) sued Cherubino Valsangiacomo, C.V.

(Cherubino) and Texas State Bank[1] in a Texas district court, seeking damages for breach of contract and fraud. Americana also sought injunctive relief against Texas State Bank to prevent it from paying on a letter of credit. On the same day the trial court held a hearing[2] on the temporary injunction,[3] Cherubino filed a special appearance. The trial court granted the injunction and subsequently denied the special appearance. By two issues, Cherubino challenges the trial court's denial of the special appearance and its failure to file findings of fact and conclusions of law.

Americana is a Texas corporation which imports juice, with its principal place of business in Pharr, Texas. Cherubino is a business located in Spain which produces, among other things, grape juice concentrate. The underlying dispute involves an agreement between Cherubino and Americana, in which Americana was to purchase a large quantity of grape juice concentrate from Cherubino. In order to purchase the juice, Americana obtained a letter of credit from Texas State Bank with Cherubino named as the beneficiary. Cherubino was to receive payment under this letter upon presentment of various documents. The grape juice concentrate was shipped, and Americana received the juice, but did not find the juice acceptable and rejected the shipment. Cherubino presented the necessary documents to Texas State Bank, which in turn, paid Cherubino thirty percent of the value of the letter of credit as provided in the letter.

■ In its first issue, Cherubino contends the trial court erred in failing to file findings of fact and conclusions of law. Rule 297 of the Texas Rules of Civil Procedure requires a trial court to file findings of fact and conclusions of law within twenty days of a timely request. Tex.R.Civ.P. 297. The rule also requires the requesting party to file a "Notice of Past Due Findings of Fact and Conclusions of Law" within thirty days after filing the original request if the trial court does not timely make findings and conclusions. *Id.* An appellant's failure to file this reminder waives "the right to complain on appeal of any error related to the trial court's failure to make a finding or conclusion." *Salinas v. Beaudrie*, 960 S.W.2d 314, 317 (Tex. App.—Corpus Christi 1997, no pet.); *Pierson v. GFH Financial Services Corp.*, 829 S.W.2d 311, 314 (Tex.App.—Austin 1992, no writ).

Here, the record shows the trial court failed to submit findings and conclusions after Cherubino requested them. However, the record does not indicate Cherubino filed a "Notice of Past Due Findings of Fact and Conclusions of Law." Thus, it has waived any complaint regarding the trial court's failure to file findings of fact and

1. Texas State Bank was non-suited from the case and is not a party to the appeal.

2. During the special appearance hearing, the trial court took judicial notice of its file, which included the temporary injunction proceeding. For our review, a reporter's record from the temporary injunction hearing has been included in the record.

3. Counsel for Cherubino appeared at and participated in the temporary injunction hearing subject to the special appearance. A defendant waives its objection to personal jurisdiction if it makes a general appearance. Every appearance not in compliance with Rule 120a of the Texas Rules of Civil Procedure is a special appearance. Tex.R.Civ.P. 120a(1). A special appearance "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard."

Tex.R.Civ.P. 120a(2). Here, because the temporary injunction hearing was related to an ancillary matter which did not resolve the issues of law or fact alleged in the underlying suit, we conclude counsel's appearance and participation did not constitute a general appearance. *Cf. Perkola v. Koelling & Assocs., Inc.*, 601 S.W.2d 110, 112 (Tex.Civ.App.—Dallas 1980, writ dism'd) (in case involving waiver of plea of privilege for venue, appearance at hearing on temporary injunction did not constitute appearance in main suit for permanent injunction and damages); *Green v. Green*, 424 S.W.2d 479, 481 (Tex.Civ.App.—Tyler 1968, no writ); *see also Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993) (purpose of temporary injunction is to preserve status quo pending trial on the merits).

conclusions of law. Cherubino's first issue is overruled.

By its second issue, Cherubino asserts the trial court erred in denying its special appearance because the evidence conclusively establishes it was not subject to personal jurisdiction in Texas.

In Texas, a party may contest personal jurisdiction by filing a special appearance. TEX.R.CIV.P. 120a(1). In *Happy Indus. v. American Specialties*, 983 S.W.2d 844, 847 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.), this Court articulated the standard for reviewing a trial court's denial of a special appearance:

> The standard of review to determine the appropriateness of the trial court's resolution of those facts is an ordinary sufficiency of the evidence review.... The scope of that review includes all evidence in the record.... If a special appearance is based on undisputed or otherwise established facts an appellate court shall conduct a de novo review of the trial court's order granting a special appearance. [However,] in applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test ... must be avoided.

*Happy*, 983 S.W.2d at 847 (citations and quotations omitted).

■ In a case where the court has not filed findings or conclusions, all questions of fact will be presumed and found in support of the judgment. *Magnolia Gas Co. & MKP v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 690 (Tex.App.—San Antonio 1998, no pet.); *Pierson*, 829 S.W.2d at 314. Because the appellate record includes a reporter's record, however, these findings are not conclusive on appeal. *Magnolia Gas Co.*, 994 S.W.2d at 690 (citing *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987)).

■ On appeal from a special appearance, we review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985); *N803RA, Inc. v. Hammer*, 11 S.W.3d 363, 366 (Tex.App.—Houston [1st. Dist.] 2000, no pet.). The plaintiff has the initial burden to plead sufficient allegations to show jurisdiction in Texas. *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965); *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 n. 2 (Tex.App.—Corpus Christi 1999, no pet.). Where the plaintiff fails to make such jurisdictional allegations, the defendant can carry its burden to defeat all bases of personal jurisdiction simply by presenting evidence that it is a nonresident. *M.G.M. Grand*, 8 S.W.3d at 408 n. 2. Once the defendant has produced credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law. *Id.*

■ The test for whether a Texas court may exercise personal jurisdiction over a nonresident defendant is whether the defendant has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin*, 968 S.W.2d 319, 326 (Tex.1998); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); TEX.CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). We focus on the defendant's activities and expectations in the forum state. *Magnolia Gas Co.*, 994 S.W.2d at 690.

A nonresident's contacts with a state can give rise to either general or specific jurisdiction. *J & J Marine, Inc. v. Le*, 982 S.W.2d 918, 923 (Tex.App.—Corpus Christi 1998, no pet.). Americana argues Cherubino's contacts with Texas were sufficient to establish both.

■ General jurisdiction is present when a defendant's contacts in the state are so continuous and systematic that the state may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *CSR*, 925 S.W.2d at 595; *Happy*, 983 S.W.2d at 847. General jurisdiction requires a showing the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *CSR*, 925 S.W.2d at 595; *Happy*, 983 S.W.2d at 847.

In support of its position that Cherubino maintained ongoing, systematic contacts with Texas, Americana relies on evidence that Cherubino sells wine in the United States and that Americana was able to acquire Cherubino wine in Texas.

Sheila Jacaman of Americana, who is able to speak, read, and write in Spanish, testified as to the contents of a Spanish article about Cherubino. According to Jacaman, the article quoted Arnoldo Valsangiacomo, president of Cherubino, as stating that Cherubino sells wine to numerous countries, including the United States. Jacaman also testified that Marta Valsangiacomo, who works for Cherubino, told her Cherubino was going to put on a wine exposition at a trade show in Miami, Florida. Americana attached a document to its response to the special appearance, which indicated Americana purchased a case of Cherubino wine from a liquor store in McAllen, Texas. According to the document, the product was obtained by Glazer's, a marketer of wine and liquor, in Dallas, Texas. Following this document was a facsimile cover sheet from Bill Rich of Glazer's to Jacaman with a note to Jacaman that the wine was obtained from AV Imports in New Jersey.

■ In order for a defendant to have minimum contacts with a state, it must purposefully avail itself of the privileges and benefits of conducting business in Texas. *CSR*, 925 S.W.2d at 594. Evidence that Cherubino sold wine into the United States does not establish purposeful availment of the Texas market; neither does Americana's obtaining Cherubino wine from a Texas liquor store, which had to order the wine from a New Jersey importer, show that Cherubino purposefully availed itself of the Texas market.

Arnoldo Valsangiacomo stated by affidavit that Cherubino is a Spanish company and has no offices in Texas. Cherubino has no employees or officers in Texas and does not advertise in Texas. We conclude Cherubino does not have systematic or continuous contacts with Texas so as to give Texas courts general jurisdiction over Cherubino.

■ Because we cannot sustain the trial court's ruling on the basis of general jurisdiction, we turn to specific jurisdiction. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the state. *Castro*, 8 S.W.3d at 409 (citing *CSR*, 925 S.W.2d at 595).

In this case, Americana asserts there was specific jurisdiction based on the existence of a contract with a Texas resident, correspondence sent into Texas, the juice sent into Texas, partial performance of the contract in Texas, and the commission of fraud by Cherubino with reliance by Americana in Texas.

Cherubino maintains it did not send the alleged non-conforming juice into Texas; rather, it delivered the juice to Americana's agent at its factory in Spain pursuant to a provision in the contract. The evidence shows the parties agreed to an "ex factory" clause, meaning Americana assumed responsibility of the product at Cherubino's factory in Spain. Americana counters that the bill of lading names Cherubino as the shipper and specifies Houston, Texas as the point of discharge. Jacaman testified about who shipped the non-conforming juice to Texas during the hearings on the temporary injunction and on the special appearance. During the special appearance hearing, Jacaman reiterat-

ed what was indicated on the bill of lading—Cherubino was the shipper and Houston was the port of destination. During her testimony at the temporary injunction hearing, however, Jacaman testified Americana was responsible for transporting the juice from Spain to Texas, and did so. Thus, the evidence establishes Cherubino did not ship the alleged non-conforming juice into Texas, but merely delivered it to Americana's agent at its factory in Spain. Nonetheless, the evidence shows Cherubino sent Americana samples of juice into Texas. Jacaman also testified that she told Valsangiacomo that the juice was going to Texas, would be blended there, and shipped throughout the United States.

 Thus, we must consider whether the shipping of samples of juice into Texas as well as the knowledge that the alleged non-conforming juice was bound for Texas is sufficient to establish specific jurisdiction.

In *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the United States Supreme Court, in a plurality opinion, explained:

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). The Texas Supreme Court, in *CMMC v. Salinas*, 929 S.W.2d 435, 436 (Tex.1996), applied the reasoning from *Asahi* to a lawsuit between a Texas winery and a French manufacturer. In *CMMC*, the winery ordered a winepress from CMMC, the French manufacturer, through an independent distributor. As the court noted, the winery contacted the independent distributor, and not vice versa. CMMC had no place of business in Texas and never had any direct contact with the winery. CMMC had previously sold equipment into the United States, including a direct sale to a different winery in Texas. CMMC arranged for the wine press to be transported from France to Houston, FOB Houston. Thus, CMMC shipped the winepress into Texas, and was aware that the destination of the press was Texas. After reviewing *Asahi*, the court concluded, that "CMMC's mere knowledge that its winepress was to be sold and used in Texas and its wiring the machine for use in the United States were not sufficient to subject CMMC to the jurisdiction of Texas courts." *Id.* at 439. The court reasoned:

> [t]his evidence simply does not show that CMMC designed products for use in Texas, or that it made any effort to market them here, or that it took any other action to purposefully avail itself of this market. Even Justice Brennan's view of the stream-of-commerce doctrine would not allow jurisdiction absent a "regular and anticipated flow of products from manufacture to distribution to retail sale." There is no flow of products from CMMC to Texas; there is scarcely a dribble.

*Id.* (citation omitted).

As in *CMMC*, the Texas plaintiff in this case approached the nonresident defendant outside of Texas for purchase of the product. Likewise, in this case the defendant was aware that the product was

bound for Texas and would eventually be distributed throughout the United States. The evidence is not indicative of a "regular and anticipated flow of products from manufacture to distribution to retail sale." Nor does the evidence show Cherubino designed products for use in Texas, or that it made any effort to market them in Texas, or that it took any other action to purposefully avail itself of the Texas market. *See id.* We conclude Cherubino cannot be hailed before a Texas court on the grounds that it shipped samples of juice into Texas or that it knew the alleged nonconforming juice would be shipped to Texas, would be mixed there, and distributed throughout the United States.

Cherubino also argues that facsimile transmissions sent to Texas and phone calls between Spain and Texas during contract negotiations do not constitute minimum contacts. There is no evidence that Cherubino representatives ever traveled to Texas to negotiate the contract. Indeed, the evidence indicates Jacaman, of Americana, approached Cherubino in Spain for the purchase of juice. The record does reveal that Cherubino sent faxes to Americana in Texas and that the parties communicated by telephone between Spain and Texas.

However, minimum contacts are not established by merely engaging in communications with a Texas corporation during performance of a contract. *Magnolia Gas Co.,* 994 S.W.2d at 691. Moreover, long-distance telephone calls to the forum state, even when coupled with written correspondence and isolated trips to the forum state, do not, standing alone, provide sufficient contacts to authorize the exercise of jurisdiction in the forum state. *Eakin v. Acosta,* 21 S.W.3d 405, 410 (Tex. App.—San Antonio 2000, no pet. h.). Thus, faxes and phone calls as part of a single business transaction do not confer jurisdiction upon Texas courts over Cherubino.

Cherubino also maintains minimum contacts are not satisfied by the alleged partial performance of the contract in Texas. Americana, by contrast, urges that the establishment of a letter of credit constitutes partial performance of the contract in Texas. According to Americana, a non-resident defendant purposefully avails itself of a forum if it is reasonably foreseeable that the resident plaintiff would perform a material part of the contract in Texas. *See Karl Rove & Co. v. Thornburgh,* 824 F.Supp. 662, 671 (W.D.Tex. 1993). However, merely contracting with a Texas corporation does not satisfy the minimum-contacts requirement. *TeleVentures, Inc. v. International Game Tech.,* 12 S.W.3d 900, 909 (Tex.App.—Austin 2000, pet. denied); *Magnolia Gas Co.,* 994 S.W.2d at 691. Partial performance of a contract in Texas is "not the *sine qua non* of personal jurisdiction." *Magnolia Gas Co.,* 994 S.W.2d at 692. Instead, the relevant question is whether the defendant's contacts are of a sufficient quality and nature that the exercise of personal jurisdiction comports with fair play and substantial justice. *Id.*

Payments sent to the forum state for performance of a contract are not determinative. *Id. A fortiori,* the unilateral act of the plaintiff in securing a method of payment in Texas can hardly be considered a substantial contact between the defendant and Texas. The parties' course of dealing is that of an importer pursuing negotiations with a foreign business. Based on the entire business transaction, we are unable to conclude that Cherubino purposefully availed itself of the Texas market. Instead, Cherubino's connection to Texas implicates a single, though extended, business transaction. *See Magnolia Gas Co.,* 994 S.W.2d at 691.

Americana also alleged specific jurisdiction on the basis that Cherubino committed fraud by presenting documents to Texas State Bank indicating the juice had been accepted by Americana. Americana presented evidence that, at the time Che-

rubino sent the documents to Texas State Bank claiming Americana had accepted the juice, Cherubino knew Americana had, in fact, rejected the juice. As Americana notes, the Fourteenth Court of Appeals has held that when a nonresident defendant "sends false information into a state, knowing it will be relied upon by a resident of the forum state, there is a foreseeable consequence of direct economic injury to the resident at its domicile." *Memorial Hosp. Sys. v. Fisher Ins.*, 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ); *see also Hoppenfeld v. Crook*, 498 S.W.2d 52, 56 (Tex.App.—Austin 1973, writ ref'd n.r.e.).

The elements of fraud are: (1) a material misrepresentation was made; (2) it was false; (3) when the representation was made, the speaker knew it was false or the statement was recklessly asserted without any knowledge of its truth; (4) the speaker made the false representation with the intent that it be acted on by the other party; (5) the other party acted in reliance on the misrepresentation; and (6) the party suffered injury as a result. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex.1990); *Kajima Intern., Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289, 292 (Tex.App.—Corpus Christi 2000, pet. filed). For a misrepresentation to be actionable, "the maker must intend to influence the very person to whom he makes the representation." *Kanon v. Methodist Hosp.*, 9 S.W.3d 365, 372 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing *Westcliff Co. v. Wall*, 153 Tex. 271, 267 S.W.2d 544, 546 (1954); *Jefmor, Inc. v. Chicago Title Ins. Co.*, 839 S.W.2d 161, 163–64 (Tex.App.—Fort Worth 1992, no writ)). In this case, Cherubino made the representations to the bank, and not to Americana. Thus, Cherubino did not make the representations with the intent that they be acted out by Americana; moreover, Americana did not act in reliance upon the representations.

In *Memorial Hosp. Sys. v. Fisher Ins.*, 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ), the court found the defendant was subject to jurisdiction in Texas after the Texas resident plaintiff relied upon a misrepresentation of the nonresident defendant. *Memorial Hosp. Sys.*, 835 S.W.2d at 650, 651. Here, there is no allegation that Americana relied upon the representation made to the bank.

In *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 536 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *overruled on other grounds, Dawson–Austin v. Austin*, 968 S.W.2d 319, 323 (Tex.1998), we explained that in reviewing a special appearance, the trial court should rely solely upon necessary jurisdictional facts, and "should not reach the merits of the case." When a plaintiff alleges that a tort was committed in Texas, the only necessary proof is that the intentional act was committed in Texas. *Id.* "Ultimate liability in tort is not a jurisdictional fact, and the merits of the cause of action are not at issue." *Id.* (citation omitted).

In *Portland*, we found sufficient jurisdictional facts to support the finding of the commission of a purposeful act in Texas. Importantly, we explained that the resident plaintiff's reliance on the representations of the nonresident defendant occurred in Texas. Thus, without reaching the merits of the case, this Court determined the resident plaintiff relied upon the misrepresentation in Texas. Here, because there is no evidence Americana relied on Cherubino's representation to the bank, the allegation of fraud does not provide Texas courts with jurisdiction over Cherubino.

Finally, Americana alleged specific jurisdiction on the basis that Cherubino fraudulently induced Americana to enter into the contract. According to Americana, Cherubino sent it a sample of juice conforming to their standards in order to induce it to enter into the contract. When Cherubino sent the juice in fulfillment of the contract, it was not of the same quality as the sample and did not conform to Americana's requirements. Thus, Americana con-

tends Cherubino engaged in a "bait and switch" scheme to induce it to enter into the contract.

A plaintiff establishes a fraudulent inducement claim by showing the elements of "a simple fraud claim." *DeSantis*, 793 S.W.2d at 688; *Balogh v. Ramos*, 978 S.W.2d 696, 701 (Tex.App.—Corpus Christi 1998, pet. denied) (opin. on reh'g). An essential element of a fraud claim is reliance on the misrepresentation. *DeSantis*, 793 S.W.2d 670 at 688.

Jacaman testified that she received samples on September 3, 1997, and September 24, 1997, which were rejected because of inadequate quality. Thereafter, on October 15, 1997, Cherubino sent Americana an offer. Jacaman testified that as of that date, there was a contract. The parties had agreed on quantity and pricing. The parties also agreed as to the quality of the juice. According to Jacaman, the contract was contingent upon Cherubino sending samples conforming with its requirements. On October 27, 1997, Americana received a sample conforming to Cherubino's quality requirements. Because it is undisputed that there was a contract prior to Americana receiving this conforming sample, the conforming sample could not have induced Americana to enter into the contract. The only samples received by Americana prior to the existence of the contract were nonconforming samples which were rejected. That Cherubino subsequently sent Americana a conforming sample was, if anything, a fulfillment of a contingency of the contract. This allegation of fraud does not give the trial court specific jurisdiction over Cherubino.

Cherubino has shown that it lacked systematic and continuous contacts with Texas, and that it took no action in Texas giving rise to Americana's cause of action. Accordingly, Cherubino has met its burden of negating all bases of personal jurisdiction. Having concluded Cherubino established it did not have minimum contacts with Texas, we need not examine whether the assertion of personal jurisdiction over Cherubino would offend traditional notions of fair play and substantial justice. Appellant's second issue is sustained.

The judgment of the trial court is REVERSED and DISMISSED for lack of personal jurisdiction.