NUMBER 13-04-308-CV

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

NATIONWIDE CAPITAL FUNDING,
INC.,                       Appellant,

 

                                           v.

 

THE H. EPPS CO., INC.,                                             Appellee.

___________________________________________________________________

 

                   On
appeal from the 28th District Court

                           of Nueces County, Texas.

___________________________________________________  _______________

 

                     MEMORANDUM
OPINION[1]

 

       Before
Chief Justice Valdez and Justices Hinojosa and Rodriguez

                      Memorandum
Opinion by Justice Rodriguez

 








Appellant,
Nationwide Capital Funding, Inc. (Nationwide), appeals the trial court's ruling
granting the special appearance of appellee, The H. Epps Co., Inc. (Epps).  By six points of error, Nationwide contends
the trial court erred (1) in failing to file findings of fact and conclusions
of law and (2) in granting the special appearance because (a) the preponderance
of the evidence established that Epps had sufficient minimum contacts with
Texas and that the exercise of jurisdiction over Epps would not have offended
traditional notions of fair play and substantial justice, and (b) the exercise
of jurisdiction over Epps was consistent with federal and state due process
standards and guidelines and section 17.042 of the Texas Civil Practices and
Remedies Code.[2]  We affirm.

I.  Standard of Review

In a special
appearance, the plaintiff bears the initial burden of pleading sufficient
allegations to bring the nonresident defendant within the provisions of the
long‑arm statute.  BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  A defendant challenging a Texas court's
personal jurisdiction over it must negate all jurisdictional bases.  Id. 
"Whether a court has personal jurisdiction over a defendant is a
question of law."  Am. Type
Culture Collection v. Coleman, 83 S.W.3d 801, 805‑06 (Tex. 2002)
(citing BMC Software, 83 S.W.3d at 794).

But in resolving this question of law, a trial court
must frequently resolve questions of fact. 
On appeal, the trial court's determination to grant or deny a special
appearance is subject to de novo review, but appellate courts may be called
upon to review the trial court's resolution of a factual dispute.








Id. at 806 (citing BMC Software, 83 S.W.3d at
794-95).  "When the trial court does
not issue findings of fact and conclusions of law with its special appearance
ruling, all facts necessary to support the judgment and supported by the
evidence are implied."  BMC
Software, 83 S.W.3d at 795.  These
implied findings are not conclusive and may be challenged for legal and factual
sufficiency when the appellate record includes the reporter's and clerk's
records, as in this case.  Id.  "For legal sufficiency points, if there
is more than a scintilla of evidence to support the finding, the no evidence
challenge fails."  Id.  Factual sufficiency is reviewed by
considering all of the evidence that was before the trial court.  See Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996) (per curiam); see also Valsangiacomo v. Americana Juice Import, Inc.,
35 S.W.3d 201, 205 (Tex. App.BCorpus Christi 2000, pet. dism'd w.o.j.).  The findings of the trial court must be
upheld under this review unless they are so against the great weight and
preponderance of the evidence as to be clearly wrong and manifestly
unjust.  Ortiz, 917 S.W.2d at 772.

Appellate courts
review the trial court's conclusions of law de novo.  BMC Software, 83 S.W.3d at 794.  An appellant may not challenge a trial
court's conclusions of law for factual insufficiency; however, the reviewing
court may review the trial court's legal conclusions drawn from the facts to
determine their correctness.  Id.  We examine the entire record, not just the
evidence in support of the trial court's legal conclusion.  Valsangiacomo, 35 S.W.3d at 205.

 








II.  Findings of Fact and Conclusions of Law

In its first
point of error, Nationwide argues that, upon request, the trial court erred in
failing to file findings of fact and conclusions of law in violation of rules
296 and 297 of the Texas Rules of Civil Procedure, and that the error was
harmful.  See Tex. R. Civ. P. 296, 297.  Rule 296 provides that, "[i]n any
case tried in the district or county court without a jury, any party may
request the court to state in writing its findings of fact and conclusions of
law."  Id. at rule 296.  Rule 297 states, "[t]he court shall file
its findings of fact and conclusions of law within twenty days after a timely
request is filed."  Id. at
rule 297.  A case is "tried"
when there is a hearing before the court on conflicting evidence.  See Besing v. Moffitt, 882 S.W.2d 79,
81-82 (Tex. App.BAmarillo 1994, no writ); Timmons v. Luce, 840
S.W.2d 582, 586 (Tex. App.BTyler 1992, no writ).  In the present case, there was an evidentiary
hearing where the trial court heard evidence on the issue of personal
jurisdiction.  Thus, rules 296 and 297 apply.








Nationwide filed
a timely request for findings of fact and conclusions of law.  See Tex.
R. Civ. P. 296.  When the trial
court did not file the requested findings or conclusions, Nationwide filed a
notice of past due findings of fact and conclusions of law in accordance with
rule 297.  See id. at rule 297. 
However, the trial court did not issue its findings of fact and
conclusions of law.  Following this
proper request and reminder, the trial court's duty to file findings of fact
and conclusions of law was mandatory.  Tenery
v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam); Cherne Indus.,
Inc., v. Magallanes, 763 S.W.2d 768, 771 (Tex. 1989); Humphrey v.
Camelot Ret. Cmty., 893 S.W.2d 55, 61 (Tex. App.‑Corpus Christi 1994,
no writ).  In such a circumstance, the
failure of the trial court to respond is presumed harmful, unless the record
before the appellate court affirmatively demonstrates that the party
complaining of the failure to file findings of fact has suffered no
injury.  Tenery, 932 S.W.2d at
30.  The test for determining harm in
such a case is whether the circumstances of the particular case would force an
appellant to guess the reason or reasons that the trial court ruled against
it.  Humphrey, 893 S.W.2d at 61
(citing Sheldon Pollack Corp. v. Pioneer Concrete Co., 765 S.W.2d 843,
845 (Tex. App.‑Dallas 1989, writ denied)).








In the present
case, we conclude that there was no harm because, under the circumstances of
this case, Nationwide was not forced to guess the reasons that the trial court
granted Epps's special appearance and dismissed the case.  Indeed, on appeal, Nationwide brings as a
point of error that the preponderance of the evidence established Epps had
minimum contacts with Texas.  Nationwide
briefs this Court on that issue, without the benefit of the trial court's
findings of fact.  Furthermore, in the
present case, the grounds for the trial court's ruling were unambiguous.  As discussed in our analysis of Nationwide's
fourth point of error, the appellate record clearly shows that evidence was
presented to demonstrate Epps's contacts, if any, with Texas.  We have reviewed the record and conclude that
an abatement of this appeal solely for the purpose of compelling the trial
court to file findings of fact and conclusions of law would serve no useful
purpose.  See Sheldon Pollack, 765
S.W.2d at 845.  Therefore, we may rule on
the merits of this case without the need to order the trial court to issue
findings of fact and conclusions of law in compliance with rule 297.  See Tex.
R. Civ. P. 297.  Accordingly, we
conclude that the appellate record affirmatively demonstrates that Nationwide
was not harmed by the trial court's failure to file findings of fact and
conclusions of law.  Tenery, 932
S.W.2d at 30.  We overrule Nationwide's
first point of error.

III.  In Personam Jurisdiction

A.  The Law








In Texas, a party
may contest personal jurisdiction by filing a special appearance.  See Tex.
R. Civ. P. 120a(1).  A special
appearance is determined by reference to the pleadings, any stipulations made
by and between the parties, any affidavits and attachments filed by the
parties, discovery, and any oral testimony. 
Id. at rule 120a(3).  A
Texas court may assert personal jurisdiction over a nonresident defendant only
when (1) the Texas long‑arm statute authorizes jurisdiction and (2) the
exercise of jurisdiction is consistent with federal and state due process
standards.  Coleman, 83 S.W.3d at
806; see Tex. Civ. Prac. &
Rem. Code Ann. ' 17.041-.045 (Vernon 1997 & Supp. 2005).  The long-arm statute authorizes jurisdiction
over a nonresident defendant "doing business" in Texas, see Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997), and allows a court to
exercise personal jurisdiction over a nonresident defendant "as far as the
federal constitutional requirements of due process will allow."  Coleman, 83 S.W.3d at 806; BMC
Software, 83 S.W.3d at 795.  Thus, in
determining whether a nonresident has met its burden to negate all bases of
jurisdiction, we rely on precedent from the United States Supreme Court and
other federal courts, as well as our own State's decisions.  BMC Software, 83 S.W.3d at 795.

Due process
permits a state court to exercise personal jurisdiction over a defendant only
if the defendant has some minimum, purposeful contacts with the state, and the
exercise of jurisdiction will not offend traditional notions of fair play and
substantial justice.  Id.; see
Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945).  "It is essential in each case that there
be some act by which the defendant 'purposefully avails' itself of the
privilege of conducting activities within the forum State, thus invoking the
benefits and protection of its laws." 
Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 784
(Tex. 2005); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76
(1985) (providing that a nonresident defendant that has "purposefully
availed" itself of the privileges and benefits of conducting business in
the foreign jurisdiction has sufficient contacts with the forum to confer
personal jurisdiction).  By invoking the
benefit and protections of a forum's laws, a nonresident consents to suit
there.  Holten, 168 S.W.3d at 784
(citing World‑Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297
(1980)).  However, a defendant should not
be subject to a foreign court's jurisdiction based upon "random,"
"fortuitous," or "attenuated" contacts.  Burger King, 471 U.S. at 475; BMC
Software, 83 S.W.3d at 795.








Personal
jurisdiction exists if the nonresident defendant's minimum contacts give rise
to either general or specific jurisdiction. 
Helicopteros Nactionales de Columbia, S.A. v. Hall, 466 U.S. 408,
413-14 (1984); Commonwealth Gen. Corp. v. York, 177 S.W.3d 923, 925
(Tex. 2005) (per curiam); BMC Software, 83 S.W.3d at 796.  Specific jurisdiction is established if the
defendant's alleged liability arises from or is related to an activity
conducted within the forum.  York,
177 S.W.3d at 925.  In contrast, general
jurisdiction is present when a defendant's contacts in a forum are continuous
and systematic so that the forum may exercise personal jurisdiction over the
defendant even if the cause of action did not arise from or relate to
activities conducted within the forum state. 
BMC Software, 83 S.W.3d at 796; Guardian Royal Exch. Assur.,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991)
(explaining that general jurisdiction "is a more demanding minimum‑contacts
analysis than specific jurisdiction"). 
Here, although Nationwide uses words such as "continuous" and
"systematic," we construe its argument as one complaining that Epps
is not subject to general jurisdiction, but that it is subject to specific
jurisdiction.

B.  Specific Jurisdiction








By its fourth
point of error, Nationwide contends the trial court erred in granting Epps's
special appearance because the preponderance of the evidence established that
Epps had minimum contacts with Texas.  See
Ortiz, 917 S.W.2d at 772 (setting out that the findings of the trial court
must be upheld under a factual sufficiency review unless they are so against
the great weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust).  Nationwide also
contends the trial court erred because the exercise of jurisdiction over Epps
would not have offended traditional notions of fair play and substantial
justice.  By its fifth point of error,
Nationwide argues that the trial court erred because the exercise of
jurisdiction over Epps is consistent with federal and state due process
guidelines and with section 17.042 of the civil practices and remedies code.

As set out above,
a minimum‑contacts analysis requires that a defendant "purposefully
avail" itself of the privilege of conducting activities within Texas, thus
invoking the benefits and protections of our laws.  See Burger King, 471 U.S. at
475; Coleman, 83 S.W.3d at 806. 
The defendant's activities, whether they consist of direct acts within
Texas or conduct outside of Texas, must justify a conclusion that the defendant
could reasonably anticipate being called into a Texas court.  Coleman, 83 S.W.3d at 806 (citing World‑Wide
Volkswagen, 444 U.S. at 297).  In
considering a defendant's contacts with Texas, it is the quality and nature of
the contacts, rather than their number, that is important to the minimum‑contacts
analysis.  Id.








In this case, the
evidence establishes that Epps is incorporated in Missouri where its only
office is located.  Epps contracted with
a sub-contractor, B&T Communications, to perform work in Arkansas.  On January 11, 2001, B&T Communications
entered into a factoring and security agreement with Nationwide, a contract
where Nationwide purchased invoices of B&T Communications.  On or about January 24, 2001, Epps
acknowledged receipt of a document entitled "Notice of Assignment"
and faxed a copy of the signed acknowledgment to Nationwide in Corpus Christi,
Nueces County, Texas.  The Notice of
Assignment informed Epps "that payments for invoices mailed or received
via EDI system should be made payable and remitted directly to Nationwide . . .
For Credit To:  B & T
COMMUNICATIONS[,] P.O. Box 260775, Corpus Christi, Texas 78426."  (Emphasis in original.)  For approximately one year, Epps wrote
approximately twenty-one checks made payable to Nationwide.  Although the envelopes were addressed to
Nationwide, there is no evidence that the checks were mailed directly from Epps
to Nationwide.  Barbara Thornton,
vice-president of Nationwide, testified that she considered the notice of
assignment to be a contract between Nationwide and Epps.  She also testified that she had at least one
conversation with John Epps, president and chief executive officer of
Epps.  The affidavit of John Epps set out
that Epps had never entered into any contract with Nationwide and had no
communications with it prior to the filing of the underlying action.  John Epps also affied as to the following:

Defendant Epps does not have a license to do
business in Texas, own or lease property in Texas, have an office, bank
account, officer, employee, agent, or representative in Texas.  Defendant does not pay taxes in Texas,
execute or perform contracts in Texas, or solicit work or employees in Texas,
or advertise in any medium intended to reach Texas.

 








Considering all
of the evidence that was before the trial court, we cannot conclude that the
court's implied findings that the acts relied upon were not purposeful but
fortuitous, see Holten, 168 S.W.3d at 784, and that the acts were
insufficient to constitute purposeful availment of the benefits and protections
of Texas law, were so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. 
See Ortiz, 917 S.W.2d at 772. 
Epps's merely faxing an acknowledgment of the notice of assignment to
Texas or mailing payments to Texas is insufficient to subject the nonresident
to the forum's jurisdiction.  See
Freudensprung v. Offshore Tech. Serv., Inc., 379 F.3d 327, 344 (5th Cir.
2004) ("This court has repeatedly held that the combination of mailing
payments to the forum state, engaging in communications related to the
execution and performance of the contract, and the existence of a contract
between the nonresident defendant and a resident of the forum are insufficient
to establish the exercise of specific personal jurisdiction over the
nonresident defendant."); Holt Oil & Gas Corp. v. Harvey, 801
F.2d 773, 778 (5th Cir. 1986) (holding that defendant was not subject to
specific jurisdiction where nonresident defendant entered into a contract with
a Texas resident, sent an agreement and checks to Texas, and engaged in extensive
telephonic and written communications with the plaintiff in Texas); Stuart
v. Spademan, 772 F.2d 1185, 1192‑94 (5th Cir. 1985) (finding no
specific jurisdiction where nonresident defendant contracted with Texas
residents, directed letters and phone calls to Texas, shipped prototypes and
products to Texas, negotiated a contract with plaintiffs that was to be
governed by Texas law, and marketed his product in Texas).








Additionally,
minimum contacts may not be satisfied by merely engaging in communications with
a Texas corporation during the performance of a contract.[3]  Televentures, Inc. v. Int'l Game Tech.,
12 S.W.3d 900, 910 (Tex. App.BAustin 2000, pet. denied); see Freudensprung,
379 F.3d at 344; Holt, 801 F.2d at 778; Stuart, 772 F.2d at 1192‑94.  Here, the exchange of communications, via
fax, mail, or a conversation, between Nationwide and Epps in the course of
carrying out a contractual obligation, if any, in itself, is insufficient to
constitute purposeful availment of the benefits and protections of Texas
law.  See Televentures, 12 S.W.3d
at 910. 

Looking at the
quality of the contacts between Epps and Texas, it is clear that  Epps did not purposefully avail itself of the
privilege of conducting activities in Texas. Nor did it invoke the benefits and
protections of Texas laws.  We,
therefore, conclude that Epps is not subject to personal jurisdiction in Texas,
and the trial court did not err in granting Epps's special appearance on that
basis.

Because of the
disposition of the fourth point of error on this basis, we need not address
further Nationwide's assertions that the exercise of in personam
jurisdiction comports with fair play and substantial justice and the exercise
of jurisdiction is consistent with federal and state due process standards.  See Tex. R. App.
P. 47.1.  Nationwide's fourth and fifth
points of error are overruled. 
Additionally, Nationwide's third issue, wherein it complains that the
trial court erred in granting Epps's special appearance, is overruled.








IV.  Conclusion

Accordingly, we affirm the judgment of the trial court.                                                                                     

NELDA
V. RODRIGUEZ

Justice

 

Memorandum Opinion
delivered and 

filed this 20th day of
April, 2006.

 











[1]As this is a memorandum opinion and
all issues of law presented by this case are well settled and the parties are
familiar with the facts, we will not recite the law and the facts in this
memorandum opinion except as necessary to advise the parties of the Court=s decision and the basic reasons
for it.  See Tex. R. App. P. 47.1, 47.4.





[2]Nationwide also contends by its
sixth point of error that the trial court erred in dismissing its claims with
prejudice.  However, in accordance with
rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider
contentions that are supported by clear and concise arguments with appropriate
citations to authorities and the record. Tex.
R. App. P. 38.1(h); Rhoades v. State, 934 S.W.2d 113, 119 (Tex.
Crim. App. 1996) (en banc).  Nationwide
has not presented argument and has not cited authority on this issue,
therefore, it has waived error.  See
Tufele v. State, 130 S.W.3d 267, 271 (Tex. App.BHouston [14th Dist.] 2002, pet.
ref'd).  We overrule Nationwide's
sixth point of error.





[3]Nationwide contends that
sub-section one of section 17.042 of the civil practice and remedies code
brings Epps within the jurisdiction of Texas.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 17.042(1) (Vernon 1997). 
That section provides, in relevant part, "[i]n addition to other
acts that may constitute doing business, a nonresident does business in this
state if the nonresident . . . contracts by mail or otherwise with a Texas
resident and either party is to perform the contract in whole or in part in
this state."  Id.  Nationwide argues that the evidence in this
case was undisputed that Epps entered into a contract with Nationwide by fax.  However, in his affidavit, John Epps stated
that Epps had never entered into any contract with Nationwide.  We need not reach this issue, however,
because, as set out above, "mailing payments to the forum state, engaging
in communications related to the execution and performance of the contract, and
the existence of a contract between the nonresident defendant and a resident of
the forum are insufficient to establish the exercise of specific personal
jurisdiction over the nonresident defendant."  Freudensprung v. Offshore Tech. Serv., Inc.,
379 F.3d 327, 344 (5th Cir. 2004). 
Therefore, even assuming without determining the existence of a
contract, the result would be the same.