**M.G.M. GRAND HOTEL, INC., Appellant,**

v.

**Lee CASTRO and Felix Barragan, Appellees.**

**No. 13–99–023–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 9, 1999.

Ricardo D. Villanueva, Atty. at Law, Joseph L. Segrato, Thornton, Summers, Biechlin, Dunham & Brown, McAllen, Vaughan Waters, Thornton, Summers, Biechlin, Dunham & Brown, Corpus Christi, Bruno Wolfenzon, Wolfenzon & Volk, Las Vegas, NV, for Appellant.

Julian Rodriguez, Jr., Atty. at Law, McAllen, Keith C. Livesay, Livesay & Cowen, Pharr, for Appellee.

Before Justices DORSEY, HINOJOSA, and CHAVEZ.

## O P I N I O N

Opinion by Justice DORSEY.

### *Facts*

Lee Castro and Felix Barragan (collectively, "Castro") brought suit against the MGM Grand Hotel ("MGM") for injuries they sustained at MGM's hotel in Las Vegas while attending the June 1997 Holyfield–Tyson fight. MGM is a Nevada corporation whose principle place of business is in Las Vegas, Nevada. MGM contested personal jurisdiction through special appearance. Castro countered that Texas has general jurisdiction over MGM through its continuous and systematic contacts with Texas by advertising in various magazines to lure Texas residents to its hotel and offering promotions and otherwise encouraging companies to sell tickets for events at the hotel to Texas residents. After the trial court denied its special appearance, MGM brought this interlocutory appeal pursuant to Texas Civil Practices and Remedies Code § 51.014(a)(7) (Vernon Supp.1999).

### *MGM's Evidence*

In support of its sworn special appearance, MGM submitted the affidavit of Senior Vice President and Secretary of MGM, Thomas Peterman. This affidavit affirmatively shows Peterman's competence to make an affidavit, and states that he has personal knowledge of the facts set forth in his affidavit and of the facts set forth in plaintiff's petition. He states that all injuries upon which plaintiffs base this suit occurred in Las Vegas. Regarding MGM's connections with Texas, he states that:

(1) MGM is a Nevada corporation with its principal place of business in Las Vegas, Nevada, who does not consent to Texas jurisdiction;

(2) MGM has never filed its articles of incorporation in Texas with the Secretary of State;

(3) MGM has not designated an agent in Texas for service of process;

(4) at the time of the accident, MGM did not own any real or personal property in Texas, did not lease or maintain any office, residence or place of business in Texas, did not own any stock in Texas, did not have any bank accounts in Texas, and has never paid any income or property taxes in Texas.

(5) for a two month period in 1996, MGM held a lease of office space in Houston, Texas, but this was a mistake and all MGM's interest was assigned to the proper company as soon as the mistake was discovered.

Castro agues that merely identifying his position as vice president of MGM does not sufficiently show how Peterman acquired personal knowledge of the facts in his affidavit, and thus, the faulty affidavit converts the special appearance into a general appearance which has the effect of waiving MGM's ability to

complain of the lack of personal jurisdiction. We agree with Castro's assertion that an affidavit must set forth facts and show affirmatively how the affiant obtained personal knowledge of those facts. *See Radio Station KSCS v. Jennings,* 750 S.W.2d 760, 761–62 (Tex.1988); *accord Welch v. Doss Aviation, Inc.,* 978 S.W.2d 215, 222 (Tex.App.—Amarillo 1998, no pet.); *City of Harlingen v. Vega,* 951 S.W.2d 25, 29 (Tex.App.—Corpus Christi 1997, no pet.). However, we are unpersuaded by his argument that the vice president and secretary of a corporation may not testify to the facts contained in Peterman's affidavit. Peterman's affidavit contained essentially two classes of information: facts gleaned from reading plaintiffs' petition, and facts regarding the corporation's contacts with the State of Texas. The facts regarding a corporation's business connections with another state would ordinarily be within the personal knowledge of the senior vice president and secretary of that corporation. We hold that a corporate officer may testify that information concerning the corporation's contacts with a given state is within his personal knowledge without showing with particularity how he acquired that knowledge.

### MGM's Contacts with Texas

Next, Castro argues that MGM's contacts with Texas are sufficient to establish general jurisdiction in that MGM promotes and encourages companies to sell tickets to Texas residents to attract them to fly to Las Vegas and attend events, relies on Texas residents to travel on Southwest Airlines to their hotel, frequently targets Texas residents, consistently sells tickets in Texas and consistently advertises in magazines predominantly directed to Texas consumers. Castro attached to its response the affidavits of both plaintiffs which described how and where their injuries were sustained. Both state that they were injured at the MGM Grand by the unruly crowd during the fight. The affidavits state that both plaintiffs live in Texas, both flew on Continental Airlines (from

Texas) to Las Vegas, and one plaintiff was first treated for his injuries by a doctor in Texas.

Plaintiff also submitted:

(1) two copies of an advertisement to a David Cassidy show at the MGM Grand which they contend was placed in both the October and November 1998 editions of *Southwest Airlines Spirit* magazine;

(2) a brochure advertising the MGM Grand Hotel which has advertisements for "Scottie's Tours 'N' Travels" and "Britton's Photo & Imaging," both local (Texan) companies, superimposed on the back of the brochure;

(3) a San Antonio ticket agency's logo and address above a MGM logo, address and map of the arena where events are held;

(4) copies of ticket stubs from the Holyfield–Tyson fight held at MGM Grand Garden Arena;

(5) a copy of the plaintiffs' flight itinerary prepared by Travel Experts, a McAllen, Texas company.

### Standard of Review

 Texas Rule of Civil Procedure 120a allows a defendant to contest personal jurisdiction by filing a special appearance. Tex.R. Civ. P. 120a(1). The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. Tex.R. Civ. P. 120a(2). Interlocutory appeal of the grant or denial of a special appearance has only been available since 1997. Tex. Civ. Prac. & Rem.Code § 51.014(a)(7) (Vernon's Supp.1999). Because the issue of personal jurisdiction is a mixed question of law and fact, courts have since grappled with the proper level of deference to accord the trial court's find-

ings.[1] This Court recently lined up with the majority of Texas appellate courts in reaffirming its standard for reviewing a trial court's denial of a special appearance:

> The standard of review to determine the appropriateness of the trial court's resolution of those facts is an ordinary sufficiency of the evidence review.... The scope of that review includes all evidence in the record.... If a special appearance is based on undisputed or otherwise established facts an appellate court shall conduct a de novo review of the trial court's order granting a special appearance. [However,] in applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test ... must be avoided.

*Happy*, 983 S.W.2d at 847 (internal citations and quotations omitted).

■■■ When a special appearance is denied by the trial court, the defendant may request fact findings. Tex.R. Civ. P. 296; Tex.R.App. P. 28.1. However, when, as here, the trial court does not file findings, all questions of fact are presumed to support the judgment. *Accord Hawsey v. Louisiana Dep't of Soc. Servs.*, 934 S.W.2d 723, 725 (Tex.App.—Houston [1st Dist.] 1996, writ denied). That is, we view the trial court's judgment as impliedly finding all the facts necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990). Where a complete statement of facts appears in the record, however, these implied findings are not conclusive and an appellant may challenge the sufficiency of the evidence. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). In this instance, the implied findings are subject to a challenge to factual sufficiency. *Id.*

■■■ We find a more concise statement of the respective burdens and standard of review helpful. First, the plaintiff has the burden to plead a prima facie showing of jurisdiction.[2] To sustain a special appearance, the nonresident defendant bears the burden of negating all bases of personal jurisdiction. *C.S.R. Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). Once the defendant has produced credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law. The appellate court reviews the trial court's application of law *de novo* and fact findings for sufficiency.

In this case, because the trial court must have relied on plaintiff's evidence to determine it had jurisdiction, we will presume that all evidence offered by the plaintiff is

---

1. *Compare Magnolia Gas Co. v. Knight Equipment & Mfg. Corp.*, 994 S.W.2d 684, 689–90 (Tex.App.—San Antonio 1998, no pet.) (adopting abuse of discretion standard for review of denial of special appearance) *with C–Loc Retention Systems, Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.—Houston [14 Dist.] 1999, no pet. h.) (adopting factual sufficiency review for fact findings, de novo review of legal conclusions); *Hotel Partners v. Craig*, 993 S.W.2d 116, 120 (Tex.App.—Dallas 1994, no pet. h.) (same); *Mort Keshin & Co., Inc. v. Houston Chronicle Pub. Co.*, 992 S.W.2d 642, 645 (Tex.App.—Houston [14 Dist.] 1999, no pet. h.) (same); *Ball v. Bigham*, 990 S.W.2d 343, 347 (Tex.App.—Amarillo 1999, no pet. h.) (same); *Cadle v. Graubart*, 990 S.W.2d 469, 471 (Tex.App.—Beaumont 1999, no pet.) (same); *Happy Indus. Corp. v. American Specialties, Inc.*, 983 S.W.2d 844, 847 (Tex. App.—Corpus Christi 1998, no pet.) (same); *Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 802 (Tex.App.—Houston [1st Dist.] 1998, pet denied).

2. That is, the plaintiff had the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long arm statute. *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 633–34 (Tex.App.—Dallas 1993, writ denied). Still, a plaintiff's failure to make jurisdictional allegations is not subject to attack by the specially appearing defendant, who still has the burden of negating all bases of personal jurisdiction at the special appearance hearing. *Id.* Without jurisdictional allegations by the plaintiff that the defendant has committed any act in Texas, the defendant can meet its burden of negating all potential bases of jurisdiction by presenting evidence that it is a nonresident. *Id.*

what it purports to be. Thus, the inferences drawn from Castro's evidence are that MGM has (1) advertised in Southwest Airlines magazine, (2) sold tickets, through Texas agents, to events at the hotel, and (3) contracted with local companies to share costs of advertising. We will also assume that MGM relies, to some extent, on the patronage of Texas residents. Because we have a complete record from the trial court and because plaintiffs did not dispute the substance of MGM's evidence regarding its Texas connections, we will also consider Peterman's affidavit.

### Personal Jurisdiction Over MGM

 A court may assert personal jurisdiction over a nonresident defendant only if the requirements of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied. *CSR, Ltd.,* 925 S.W.2d at 594. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant "as far as the federal constitutional requirements of due process will allow." *CSR,* 925 S.W.2d at 594. Thus, the question of whether the defendant is within the Texas long arm statute typically merges with the issue of whether personal jurisdiction is consistent with federal standards. *Id.*

 Due process permits a state court to exercise personal jurisdiction over a defendant only if the defendant has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998); *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex.1996); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A nonresident who purposefully avails himself of the privileges and benefits of conducting business in Texas must answer to a suit in Texas. *CSR,* 925 S.W.2d at 594. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). However, a nonresident will not be subjected to the jurisdiction of Texas courts based upon mere random, fortuitous, or attenuated contacts. *CSR,* 925 S.W.2d at 595; *Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174.

 A nonresident's contacts with a state can give rise to either general or specific jurisdiction. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the state. *CSR,* 925 S.W.2d at 595. Merely releasing into the stream of commerce a product that comes to rest in Texas is not sufficient to establish jurisdiction. *Happy,* 983 S.W.2d at 847. Rather, the Texas Supreme Court has stated that the act must be purposefully directed at Texas so that the defendant could foresee being haled into court here. *Id.* Single or even occasional acts are not sufficient to support jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the state. *Id.* "For example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State would be required to hold a manufacturer answerable to suit in a foreign state." *CMMC v. Salinas,* 929 S.W.2d at 438. And even when minimum contacts with the forum state are established, the state court cannot exercise personal jurisdiction over the defendant if to do so would offend traditional notions of fairness. *Id.*

 On the other hand general jurisdiction is present when a defendant's contacts in the state are so continuous and systematic that the state may exercise per-

sonal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *CSR,* 925 S.W.2d at 595; *Happy,* 983 S.W.2d at 847. General jurisdiction requires a showing the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *CSR,* 925 S.W.2d at 595; *Happy,* 983 S.W.2d at 847.

### State's Jurisdiction over Out–of–State Resorts

While Texas courts have had little, if any, opportunity to assess personal jurisdiction over out-of-state resorts, other jurisdictions have developed standards for analyzing this issue. Traditionally, personal jurisdiction has depended upon the resort business's physical presence in the forum. Judge Thomas A. Dickerson, *The Internet, the Solicitation Plus Doctrine and Jurisdiction over Foreign Hotels and Other Travel Supplier*s, in SECOND ANN. CONF. ON INT'L. TRAVEL & TOURISM: LAW, MANAGEMENT REGULATION 1999 (790 PLI Com. Law & Prac. Course Handbook Series 735) (April 1999) (hereinafter *Solicitation Plus* ).

> For example, if a foreign hotel or air carrier conducted business through a wholly owned subsidiary or joint venturer or maintained an office with a staff, a bank account and a local telephone number then jurisdiction would, generally, be appropriate. The rationale being that in return for the privilege of doing business in the forum a foreign travel supplier or tour operator should be available to answer claims brought by injured travelers. In the absence of physical presence, however, the assertion of personal jurisdiction is more problematical. For example, instead of maintaining an office in the forum a foreign travel supplier may conduct business through an agent independent contractor, travel agent or tour operator. Under these circumstances personal jurisdiction has been found if there

was active solicitation of business plus contract formation in the forum. This concept, known as the "solicitation-plus" doctrine, is still followed by most U.S. Courts.

*Solicitation Plus* at 738–39. The solicitation-plus doctrine holds that determination of whether jurisdiction is appropriate should balance the extent to which a defendant purposefully avails itself of the privilege of conducting business in the forum state and requires that the claim arises out the defendant's forum related activities and that the exercise of jurisdiction is reasonable. *Id.* "Reasonableness" depends on (1) the extent of purposeful interjection, (2) the burden on defendant to defend in the chosen forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in the dispute, (5) the most efficient forum for judicial resolution of the dispute, (6) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternate forum. *Id.*

In *Lane v. Vacation Charters, Ltd.,* the New York court explained that the solicitation-plus doctrine requires that the plaintiff present evidence of some business activity conducted within the forum state by an agent or representative of the out-of-state defendant. 750 F.Supp. 120, 124 (S.D.N.Y.1990). The court noted that under the solicitation-plus rule, no matter how substantial the revenues generated by a nonresident business's advertising in the state, mere advertising and solicitation of orders are insufficient to warrant jurisdiction. *Id.* Rather, the doctrine requires out-of-state solicitation "plus" some financial or commercial dealings with the forum state, or holding himself out as operating in the forum state either personally or through an agent. *Id.* In the instant case, plaintiffs have presented no evidence that MGM did anything more than solicit business and advertise in Texas.

Other courts uniformly require something more than merely soliciting business

from another state to justify imposition of personal jurisdiction. *See id.; Afflerbach v. Cunard Line, Ltd.,* 14 F.Supp.2d 1260 (D.Wyo.1998) (holding Wyoming did not have personal jurisdiction over out-of-state cruise ship company even though it solicited business through national advertising and sold tours through Wyoming travel agents); *Lane,* 750 F.Supp. 120 (S.D.N.Y. 1990) (holding that New York court did not have personal jurisdiction over Pennsylvania ski resort even where evidence showed that resort targeted New York residents, maintained an 800 number for New York residents, sent brochures to New York travel agents upon request and regularly sent employees to New York trade shows); *Fields v. Ramada Inn,* 816 F.Supp. 1033 (E.D.Pa.1993) (holding that Pennsylvania had insufficient contact with North Carolina hotel to establish personal jurisdiction where Pennsylvania resident drowned in hotel pool even though hotel maintained 800 number for out-of-state hotel reservations, plaintiffs made their reservations through a Pennsylvania travel agent, and the hotel advertised nationally); *Clark v. City of St. Augustine, Florida,* 977 F.Supp. 541 (D.Mass.1997) (advertising in *Boston Globe* and sending brochure to Boston travel agencies that were distributed to the plaintiffs and induced plaintiffs to travel to city held insufficient to confer personal jurisdiction to Massachusetts over Florida city where tourist from Boston was injured). A continuous and systematic pattern of advertising in a foreign state through in-state and national media, in addition to other in-state promotional activities aimed at enticing the state's residents to attend an out of state facility, has been found sufficient minimum contacts to confer personal jurisdiction. *Pedelahore v. Astropark, Inc.,* 745 F.2d 346 (5th Cir. 1985); *Kervin v. Red River Ski Area, Inc.,* 711 F.Supp. 1383 (E.D.Tex.1989).

Those cases holding an out-of-state resort subject to personal jurisdiction of the forum state's court have found a substantial link from the resort to the forum state. For example, in *Gavigan v. Walt Disney World,* 646 F.Supp. 786 (E.D.Pa.1986), the Pennsylvania court found that it had personal jurisdiction over Walt Disney World for an accident that occurred at Walt Disney in Florida because the evidence showed that Walt Disney had conducted an extensive marketing campaign directed specifically at Philadelphia residents. Again, we note that Castro has produced no such evidence. Also, Castro has offered no evidence showing that MGM either specifically targets Texas or Rio Grande Valley residents, relies significantly upon this market for revenues, or maintains any agent or representative there. *Cf. Lane,* 750 F.Supp. at 122.

The Fifth Circuit recently decided a case that is illustrative, *Gardemal v. Westin Hotel Company,* 186 F.3d 588, 591–92 (5th Cir.1999). In that case, Lisa Gardemal sued Westin Hotel Company and Westin Mexico, S.A. de C.V. in Texas federal district court under Texas law, alleging that the defendants were liable for the drowning death of her husband in Cabo San Lucas, Mexico. *Id.* Gardemal and her husband had traveled to Cabo San Lucas to attend a medical seminar held at the Westin resort hotel there. *Id.* Her husband drowned while snorkeling near the hotel. *Id.* Westin moved to dismiss the suit alleging that there were insufficient minimum contacts to bring it within the personal jurisdiction of the court. *Id.*

Gardemal argued that the district court had specific jurisdiction over Westin Mexico because her husband decided to attend the seminar after reading a Westin brochure that was distributed to him in Texas. *Id.* at 595–96. The Fifth Circuit court did not find this sufficient. *Id.* It noted that the medical seminar at Cabo San Lucas was arranged and promoted by Smith & Nephew Richards, Inc., a supplier of orthopedic hardware, and that the Gardemals obtained the brochure from this company along with the registration materials for the seminar. *Id.* There was no specific evidence that Westin was involved in pro-

moting the seminar or soliciting the Gardemals. *Id.* On those grounds, the court found no basis for the exercise of specific jurisdiction over Westin Mexico. *Id.*

Gardemal also argued that the court had general jurisdiction over Westin Mexico, contending that it advertised in several Texas newspapers and magazines and contracted with numerous Texas businesses like American Airlines, Continental Airlines, and various wholesalers in the travel industry. *Id.* The court found that Gardemal had shown no evidence regarding how frequently Westin ran ads in Texas newspapers and magazines, how much business the ads generated, nor any proof of the specific relationship between Westin Mexico and the Texas tourist companies, nor the amount of business these companies have generated for Westin Mexico. *Id.* Accordingly, the court found no basis for exercise of general jurisdiction either. *Id.*

We find the reasoning in *Gardemal* persuasive. As in *Gardemal,* Castro's assertions are vague, overly general, and give no indication of the extent, duration, or frequency of MGM's business dealings in Texas. Even when taken as true, Castro's assertions amount to little more than a vague claim that MGM conducts business in Texas. MGM's corporate officer testified that MGM has never filed its articles of incorporation in Texas with the Secretary of State, has not designated an agent in Texas for service of process, did not own any real or personal property in Texas, lease or maintain any office, residence or place of business in Texas, nor own any stock or have any bank accounts in Texas, and has never paid any income or property taxes in Texas. On these facts, we cannot conclude that MGM has the type of continuous and systematic contacts necessary for the exercise of general jurisdiction.

■ We note that Rule 120a allows the court to order a continuance to permit further discovery or make any other order as is just to allow the plaintiff to garner his evidence establishing personal jurisdiction. *See* TEX.R. CIV. P. 120a (3). Like most

other rights, in order to complain on appeal of a trial court's failure to allow further discovery to obtain evidence on minimum contacts, the plaintiff must request it from the trial court. *See* TEX.R.APP. P. 33.1. In this case, plaintiff made no request, and thus waived the issue. *Id.* Accordingly, we overrule the trial court's finding of personal jurisdiction over MGM and reverse its denial of special appearance. We therefore dismiss this case for lack of personal jurisdiction over the defendant.