NUMBER 13-03-323-CV

COURT OF APPEALS
 
THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




ARTH BRASS & ALUMINUM CASTINGS, INC.,                     Appellant,

v.
 
HARSCO CORPORATION, FORMERLY D/B/A
WAYNE WHEELED VEHICLES, A HARSCO COMPANY,           Appellee.




On appeal from the 93rd District Court
of Hidalgo County, Texas.




MEMORANDUM OPINION

Before Justices Hinojosa, Yañez, and Castillo
Opinion by Justice Castillo
 
         This is an interlocutory appeal from the trial court's order denying the special
appearance of Arth Brass & Aluminum Castings, Inc., appellant ("Arth Brass").


 
Appellee is Harsco Corporation, formerly doing business as Wayne Wheeled Vehicles
("Harsco"). We reverse and render. 
I. BACKGROUND
         Fortunato Lopez was an employee of Edinburg Consolidated Independent School
District. He was cleaning the windshield of a school bus, holding on to a bus mirror
handle known as a "Cowl Grab Handle," when the handle broke. Lopez fell and struck
his head, shoulders, and back on the pavement. He sued Harsco and several other
companies in a products liability action. In turn, Harsco filed a third-party petition
against Arth Brass for contribution and statutory indemnity in the event Harsco is
found liable. Harsco alleged that Arth Brass was one of two possible designers,
manufacturers, or suppliers of the Cowl Grab Handle. 
         By special appearance supported with a sworn affidavit, Arth Brass denied that
it is subject to either the specific or general jurisdiction of the State of Texas. After
discovery on the jurisdiction question and presentation of evidence in the form of
affidavits and deposition testimony, the trial court denied Arth Brass's special
appearance. The trial court did not file findings of fact and conclusions of law. This
appeal ensued. 
         In determining the question of personal jurisdiction, a trial court
frequently resolves questions of fact. Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002), cert. denied, 537 U.S. 1191 ( 2003). 
In the absence of written findings of fact and conclusions of law, we imply fact
findings necessary to support a trial court's legal conclusions. See McConnell v.
Attorney Gen., 878 S.W.2d 281, 284 (Tex. App.–Corpus Christi 1994, no
writ).  When the appellate record includes the reporter and clerk's records,
neither express nor implied fact findings are conclusive and may be challenged for legal
and factual sufficiency. Am. Type Culture Collection, 83 S.W.3d at 806; M.G.M.
Grand Hotel v. Castro, 8 S.W.3d 403, 408 (Tex. App.–Corpus Christi 1999, no pet.). 
In its sole issue, Arth Brass challenges the legal sufficiency of the evidence to support
the trial court's conclusions of law. However, we review fact findings for sufficiency,
not conclusions of law. M.G.M. Grand Hotel, 8 S.W.3d at 408. Further, our review
of the parties' briefs indicates that they agree on the facts but disagree about their
legal significance. 
         We liberally construe the briefing rules. See Tex. R. App. P. 38.9. We interpret
Arth Brass's issue as challenging the trial court's legal conclusion in exercising
personal jurisdiction. See Tex. R. App. P. 38.1(e); see also Selectouch Corp. v. Perfect
Starch, Inc., 111 S.W.3d 830, 835 (Tex. App.–Dallas 2003, no pet. h.) (construing
issue as challenging both legal and factual sufficiency). 

II. STANDARD AND SCOPE OF REVIEW
         We review a trial court's challenged conclusions of law as legal questions. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Thus, we
review de novo a trial court's application of the law to the facts in
ruling on a special appearance. Am. Type Culture Collection, 83 S.W.3d at 806; Exito
Elecs. v. Trejo, 99 S.W.3d 360, 366 (Tex. App.–Corpus Christi 2003, pet. filed). In
other words, we determine the correctness of the trial court's legal conclusions. BMC
Software, 83 S.W.3d at 794. If we determine that a conclusion of law is not correct,
but the trial court rendered the proper judgment, the incorrect conclusion of law does
not require reversal. Id. Thus, in reviewing challenges to the trial court's conclusions
of law, we sustain the judgment on any legal theory supported by the evidence. In re
A.M., 101 S.W.3d 480, 484-85 (Tex. App.–Corpus Christi 2002, no pet.). We do not
reverse an incorrect conclusion of law if the findings of fact support a correct legal
theory. Id. at 485. We examine the entire record, not just the evidence in support of
the trial court's legal conclusion. Valsangiacomo v. Americana Juice Import,
35 S.W.3d 201, 205 (Tex. App.–Corpus Christi 2000, pet. dism'd w.o.j.) ("On appeal
from a special appearance, we review all evidence in the record to determine if the
nonresident defendant negated all possible grounds for personal jurisdiction."). 
III. SPECIAL-APPEARANCE BURDENS
         The plaintiff bears the initial burden of pleading allegations sufficient to bring
a nonresident defendant within the personal jurisdiction of the State of Texas. 
Am. Type Culture Collection, 83 S.W.3d at 807; Exito Elecs., 99 S.W.3d
at 366.  A nonresident defendant challenging a Texas court's personal jurisdiction
by special appearance must negate all jurisdictional bases. Am. Type Culture
Collection, 83 S.W.3d at 807; Exito Elecs., 99 S.W.3d at 366-67. In the absence of
sufficient personal-jurisdiction allegations by the plaintiff, the defendant meets its
burden of negating all potential bases of personal jurisdiction by presenting evidence
that it is a nonresident. Exito Elecs., 99 S.W.3d at 367. Once the defendant
produces credible evidence negating all bases of jurisdiction, the burden shifts back to
the plaintiff, who bears the ultimate burden to establish that the Texas court has
personal jurisdiction over the defendant. M.G.M. Grand Hotel, 8 S.W.3d at 408. 
         On appeal, Arth Brass does not contend that Harsco did not meet its burden of
pleading allegations sufficient to establish the trial court's personal jurisdiction.


 
Accordingly, we find that the burden shifted to Arth Brass to negate all bases
for the trial court's exercise of personal jurisdiction. See Exito Elecs., 99 S.W.3d
at 366-67. We turn to the record. 
IV. THE JURISDICTIONAL FACTS
         A trial court determines a special appearance by referring to the pleadings, any
stipulations made by and between the parties, any affidavits and attachments filed by
the parties, discovery, and any oral testimony. Tex. R. Civ. P. 120a; M.G.M. Grand
Hotel, 8 S.W.3d at 407. In support of its special appearance, Arth Brass filed two
affidavits by Robin Brennan, its chief executive officer and president, as well as
excerpts from Brennan's deposition. In its response, Harsco provided Brennan's
complete deposition. We have a complete clerk's record from the trial court.


 
Accordingly, we include Brennan's affidavits and deposition, with their attached
exhibits, within the record we review. See M.G.M. Grand Hotel, 8 S.W.3d at 409. 
         Our review of the record as a whole reveals evidence of the following facts,
which Harsco does not dispute: 
•       Arth Brass is an Ohio corporation with its offices located in Ohio. It makes and
markets nonferrous castings, primarily from aluminum alloys. 
•       Arth Brass is not licensed or qualified to do business in Texas. 
•       Arth Brass has no agent or representative for service of process in Texas. 
•       Arth Brass has never maintained an office or facility in Texas, nor has it ever
owned or rented any real or personal property in Texas. 
•       Arth Brass has no employees, salespersons, or sales agents in Texas. 
•       Arth Brass has never directed any advertising toward Texas, and its advertising
consists solely of a listing in a local yellow pages directory. 
•       Arth Brass maintains no bank account, mailing address, or telephone listing in
Texas.
•       Arth Brass does not accept payment from Texas customers via wire transfer or
through lockboxes located in Texas.
•       No employee, sales agent, officer, or director of Arth Brass has traveled to
Texas in the capacity of company representative. 
•       Arth Brass does not pay for internet promotion, although it is listed on internet
sites, including the Thomas Register of American Manufacturers, which is a
trade listing containing information about industrial products and services
offered by U.S. and Canadian companies. 
•       Arth Brass's business with Wayne Wheeled Vehicles, which was Harsco's
former assumed name, consisted of shipments of Cowl Grab Handles to Wayne
Wheeled Vehicles' facilities in Ohio. 
•       Arth Brass understood the Cowl Grab Handles were to be used on school buses.
•       Arth Brass has not purchased any equipment, products, or materials from Texas
suppliers. 
•       Arth Brass delivers its shipments to all of its customers, both within and outside
Ohio, "F.O.B. Cleveland" or free on board Cleveland, so that title passes to the
buyer in Cleveland, Ohio. The buyers are responsible for all costs of shipping
outside Cleveland. 
•       Arth Brass has done business with two Texas companies since 1991, Premier
Lubrication and Nordstrom. 
•       Premier contacted Arth Brass for a quote for castings. Arth Brass created a
pattern for Premier and delivered a total of five shipments to Premier between
1999 and the date of Brennan's deposition. The shipments ultimately were
delivered to Premier's Houston address by the carrier to whom Arth Brass
delivered the shipments F.O.B. Cleveland. Arth Brass sent invoices for the
castings to a Houston address. Each of the invoices stated "F.O.B. Cleveland." 
•       During the years 1999, 2000, and 2001, Arth Brass's percentage of annual
sales to Premier was 1.3 percent, 0.7 percent, and 1.0 percent, respectively. 
During Arth Brass's dealings with Premier, Arth Brass received checks for
payment drawn on Premier's Texas bank. 
•       Nordstrom faxed purchase orders to Arth Brass from Texas. The castings Arth
Brass sold to Nordstrom were ultimately delivered to an address in Sulphur
Springs, Texas by the carrier to whom Arth Brass delivered the shipments
F.O.B. Cleveland. Arth Brass sent invoices for the castings to a Texas address. 
Each of the invoices stated "F.O.B. Cleveland." 
•       During the years Arth Brass did business with Nordstrom, between 1991-92
and 2001-02, Arth Brass's percentage of annual sales from Nordstrom was less
than 0.5 percent annually. 
•       Arth Brass stored in its Ohio plant an unidentified item that it used to make
castings for Nordstrom. Arth Brass could not use the item to make castings for
any other customer and was required by Nordstrom to keep the item
confidential and protect it like a trade secret. 
•       The combined sales of Arth Brass to Premier and Nordstrom did not
exceed 1.6 percent for any calendar year from 1991 to 2001. The largest sales
year for Premier totaled $12,499.52. The largest sales year for Nordstrom
totaled $4,923.12. The total sales to Premier was $26,217.55. The total
sales to Nordstrom was $25,808.46. The total combined sales to both Premier
and Nordstrom over ten years equaled $52,026.01. 
         There is no evidence that Arth Brass has subsidiaries or other related entities
that do business in Texas. Nor did Harsco allege any theory of alter ego or single
business enterprise. 
V. THE LAW 
         If a nonresident defendant purposefully avails itself of the privileges and
benefits of conducting business in the State of Texas, this State has
sufficient contacts to confer personal jurisdiction. Tex. Civ. Prac. & Rem. Code
Ann. § 17.042 (Vernon 1997); BMC Software, 83 S.W.3d at 795; Exito
Elecs., 99 S.W.3d at 366. The Texas long-arm statute governs Texas courts' exercise
of jurisdiction over nonresident defendants. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 17.041-.045 (Vernon 1997 & Supp. 2003); BMC Software, 83 S.W.3d
at 795. The long-arm statute permits Texas courts to exercise jurisdiction
over a nonresident defendant that "does business" in Texas. Tex. Civ. Prac. & Rem.
Code Ann. § 17.042 (Vernon 1997). The statute recites a non-exclusive list of
activities that constitute "doing business." Id.; BMC Software, 83 S.W.3d
at 795.  Section 17.042's broad language extends Texas courts' personal jurisdiction
"as far as the federal constitutional requirements of due process will permit." BMC
Software, 83 S.W.3d at 795. 
         Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the
forum state, and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice. Id. Although not determinative, foreseeability is an
important consideration in deciding whether the nonresident defendant has
purposefully established "minimum contacts" with the forum state. Id. However, a
defendant should not be subject to a foreign court's jurisdiction based on "random,"
"fortuitous," or "attenuated" contacts. Id. 
          Accordingly, we focus on the defendant's activities and expectations in deciding
whether it is proper to call it before a Texas court. Am. Type Culture Collection,
83 S.W.3d at 806. The minimum-contacts analysis requires that a nonresident
defendant "purposefully avail" itself of the privilege of conducting activities within
Texas, thus invoking the benefits and protections of the laws of Texas. Id. (citing
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The defendant's
activities, whether they consist of direct acts within Texas or conduct outside Texas,
must justify a conclusion that the defendant reasonably could anticipate being called
into a Texas court.  Am. Type Culture Collection, 83 S.W.3d at 806 (citing
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). 
         It is not the quantity but the quality and nature of the contacts that
are important to the minimum-contacts analysis. See Am. Type Culture
Collection, 83 S.W.3d at 806. Even a single act can support jurisdiction, so long as
it is substantial. See Royal Mortg. Corp. v. Montague, 41 S.W.3d 721, 731 (Tex.
App.–Fort Worth 2001, no pet.) (citing Burger King, 471 U.S. at 475 n.18). The
nonresident defendant's minimum contacts with Texas may confer either
specific or general personal jurisdiction. BMC Software, 83 S.W.3d at 795; Exito
Elecs., 99 S.W.3d at 366. In analyzing both specific and general personal jurisdiction,
we focus on the relationship among the defendant, Texas, and the litigation. Alenia
Spazio, S.P.A. v. Reid, No. 14-03-00366-CV, 2003 Tex. App. LEXIS 10728, at *12
(Tex. App.—Houston [14th Dist.] Dec. 23, 2003, no pet. h.)
A. Specific Personal Jurisdiction
         Specific personal jurisdiction requires that the alleged liability arise from or
relate to an activity conducted in Texas. BMC Software, 83 S.W.3d at 795; Exito
Elecs., 99 S.W.3d at 366. For a court to exercise specific jurisdiction over a
nonresident defendant, two requirements must be met: (1) the defendant's contacts
with the forum must be purposeful; and (2) the cause of action must arise from or
relate to those contacts. Am. Type Culture Collection, 83 S.W.3d at 806. Merely
releasing into the stream of commerce a product that comes to rest in Texas is not
sufficient to establish specific personal jurisdiction. M.G.M. Grand Hotel, 8 S.W.3d
at 409. Rather, the supreme court has stated that the act must be purposefully
directed at Texas so that the defendant could foresee being haled into court here. Id.
(citing CMMC v. Salinas, 929 S.W.2d 435, 438 (Tex. 1996)). 
B. General Personal Jurisdiction
         General personal jurisdiction requires that the contacts in Texas be
"continuous and systematic" but does not demand that the cause of action arise from
or relate to activities conducted in Texas. BMC Software, 83 S.W.3d at 796; Exito
Elecs., 99 S.W.3d at 366. The term "continuous and systematic" imposes a more
demanding minimum-contacts analysis than that required to support specific personal
jurisdiction. M.G.M. Grand Hotel, 8 S.W.3d at 409-10. Thus, general jurisdiction
allows a forum to exercise jurisdiction over a defendant even if the cause of action did
not arise from or relate to a defendant's contacts with the forum. Am. Type Culture
Collection, 83 S.W.3d at 807. In assessing the quality of the contacts in conducting
a general-jurisdiction analysis, we do not view each contact in isolation. Alenia Spazio,
2003 Tex. App. LEXIS 10728, at *31. Rather, we carefully investigate, compile, sort,
and analyze all contacts to determine if together they are sufficient to support general
personal jurisdiction. Id. 

VI. ANALYSIS 
A. Specific Personal Jurisdiction
         We find no evidence that Arth Brass purposefully directed sales of Cowl Grab
Handles to Texas. We disagree with Harsco's flawed syllogism that since Arth Brass
sold Cowl Grab Handles to be used on school buses, and school buses are mobile,
that Arth Brass could foresee being haled into a Texas court. See M.G.M. Grand
Hotel, 8 S.W.3d at 409. We conclude that when Arth Brass sold Cowl Grab Handles
to Wayne Wheeled Vehicles, an Ohio company, it merely released into the stream of
commerce a product that eventually came to rest in Texas. See id. There is no flow
of Cowl Grab Handles from Arth Brass to Texas; there is not even a dribble. See
CMMC, 929 S.W.2d at 439. 
         We hold that Arth Brass met its burden of negating specific jurisdiction as a
basis for the trial court's exercise of jurisdiction. See BMC Software, 83 S.W.3d
at 795; see also Alenia Spazio, 2003 Tex. App. LEXIS 10728, at *29 (concluding that
defendant "could not have expressly aimed its allegedly tortious conduct at Texas or
known that the brunt of any injury from such conduct would be felt in Texas."). We
cannot sustain the trial court's exercise of personal jurisdiction over Arth Brass on the
basis that Arth Brass purposefully directed its sales of Cowl Grab Handles to Texas. 
See CMMC, 929 S.W.2d at 439. 

B. General Personal Jurisdiction
         General jurisdiction is premised on the notion of consent. Am. Type Culture
Collection, 83 S.W.3d at 808. That is, by invoking the benefits and protections of a
forum's laws, a nonresident defendant consents to being sued there. Id. In American
Type Culture Collection, the supreme court balanced the Texas contacts by a
nonresident defendant, American Type Culture Collection, Inc. ("ATCC"), with ATCC's
avoidance of the benefits and protections of the laws of other forums in the way it
structured its business transactions. Id. The supreme court decided that the legal
fiction of consent did not apply when ATCC deliberately contracted for title to the
product to pass outside Texas. Id. Thus, the purposeful structure of ATCC's
transactions was a factor that weighed against a finding that Texas had general
jurisdiction over ATCC. Id. 
         Like ATCC, Arth Brass sold its castings "F.O.B." in its home state. See id. 
Moreover, we find that the quality and nature of Arth Brass's contacts with Texas
were significantly less than those found by the supreme court to be insufficient to
support general jurisdiction over ATCC. See id. Specifically, the extent and number
of ATCC's contacts with Texas were far more extensive than the percentage of sales
and total revenues generated by Arth Brass's Texas business and the number of Texas
companies with whom Arth Brass contracted. See id. Further, while ATCC did
substantial business with Texas vendors, Arth Brass did not purchase any Texas
products in conducting its business. See id. Finally, unlike ATCC, Arth Brass did not
actively market its products in Texas by attending trade conferences or other venues
to showcase its products and services. See id. 
         Harsco suggests that American Type Culture Collection is distinguishable by
reference to the underlying merits of that case. We are not concerned with the
merits. We find the jurisdictional facts in this case indistinguishable from those in
American Type Culture Collection, except that Arth Brass's contacts with Texas were
even more minimal than ATCC's. After carefully analyzing the nature and quality of
Arth Brass's contacts with Texas, we hold that Arth Brass met its burden of negating
general jurisdiction as a basis for the trial court's exercise of jurisdiction. See id.; see
also Alenia Spazio, 2003 Tex. App. LEXIS 10728, at *31 (analyzing general personal
jurisdiction and finding that party contracting with Texas corporation does not avail
itself of protection of Texas law or voluntarily submit to Texas courts absent express
understanding to that effect even if contract contains Texas choice-of-law clause). We
cannot sustain the trial court's exercise of personal jurisdiction over Arth Brass on the
basis that Arth Brass continuously and systematically invoked the benefits and
protections of the laws of the State of Texas to the extent that it consented to being
sued here. See id. 
VII. CONCLUSION
         We hold that Harsco did not meet its ultimate burden to establish that the trial
court has personal jurisdiction over Arth Brass. See M.G.M. Grand Hotel, 8 S.W.3d
at 408. Accordingly, we need not reach the issue of whether the exercise of
jurisdiction over Arth Brass comports with traditional notions of fair play and
substantial justice. See Tex. R. App. P. 47.1; see also Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991). 
We sustain Arth Brass's sole issue on appeal. We reverse the trial court's order
denying Arth Brass's special appearance. We render judgment dismissing for lack of
personal jurisdiction Harsco's third-party petition against Arth Brass. See Am. Type
Culture Collection, 83 S.W.3d at 810. 
 
                                                                        ERRLINDA CASTILLO
                                                                        Justice

Memorandum Opinion delivered and filed
this 23rd day of January, 2004.