NUMBER 13-04-00175-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

ROBERT G. MORRIS, D.V.M. AND JOYCE
M. MORRIS,             Appellants,

 

                                                             v.

 

BEAU SCHILLING,                                                                             Appellee.

 

   On appeal from the 343rd District Court of Live Oak County,
Texas.

 

                       MEMORANDUM OPINION

 

    Before Chief Justice Valdez and Justices Hinojosa and
Rodriguez

                         Memorandum
Opinion by Justice Hinojosa

 








This is an interlocutory appeal from the
denial of special appearances filed by appellants, Robert G. Morris, D.V.M. (ARobert@) and Joyce M. Morris (AJoyce@).[1]  The Morrises, non-residents of Texas, contend
that any contact that arose with Texas was within the scope of their employment
with a company owned and operated solely by them.[2]  By four points of error, appellants contend
the evidence is legally and factually insufficient to support the trial court=s finding that appellants satisfy
jurisdictional requirements individually and personally, rather than as a
corporation.[3]  We affirm.

Because the issues of law presented by this case are well settled and the
parties are familiar with the facts, we will not recite the law and facts in
this opinion except as necessary to advise the parties of the Court=s decision and the basic reasons for it.  See Tex.
R. App. P. 47.4.

                                                     A.  Standard
of Review








The Texas long-arm statute authorizes Texas
courts to exercise personal jurisdiction over a non-resident defendant that Adoes business@ in Texas. 
See Tex. Civ. Prac. &
Rem. Code Ann. '' 17.041-.045 (Vernon 1997& Vernon Supp.
2004-05).  The plaintiff has the initial
burden of pleading enough facts to bring the non-resident defendant within the
provision of the long‑arm statute. 
BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex.
2002).  Whether a court has personal
jurisdiction over a non-resident defendant is a question of law.  BMC Software, 83 S.W.3d at 794.  However, the trial court frequently resolves
questions of fact before deciding the personal jurisdiction question.  Id. 
If a trial court enters an order denying a special appearance and also
issues findings of fact and conclusions of law, the non-resident defendant may
challenge the fact findings on legal and factual sufficiency grounds.  Id. 
This Court then reviews the factual findings for both legal and factual
sufficiency, Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996), and the
conclusions of law de novo.  BMC
Software, 83 S.W.3d at 794.  Factual
sufficiency is reviewed by considering all of the evidence that was before the
trial court.  Ortiz, 917 S.W.2d at
772; see also Valsangiacomo v. Americana Juice Import, Inc., 35 S.W.3d
201, 205  (Tex. App.BCorpus Christi 2000, pet. dism'd
w.o.j.).  The findings of the trial court
must be upheld under this review unless they are so against the great weight
and preponderance of the evidence as to be clearly wrong and manifestly
unjust.  Ortiz, 917 S.W.2d at
772.  For legal sufficiency points, we
consider only the evidence that supports the finding and we disregard all
evidence and inferences to the contrary. 
Lenz v. Lenz, 79 S.W.3d 10, 19 
(Tex. 2002).  If there is more
than a scintilla of evidence in the record which supports the trial court's
findings, those findings will be upheld. 
BMC Software, 83 S.W.3d at 794.

B.  In Personam Jurisdiction








If a non-resident defendant purposefully
avails itself of the privileges and benefits of conducting business in the
State of Texas, Texas has sufficient contacts to confer personal
jurisdiction.  See Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997); BMC Software,
83 S.W.3d at 795.  The Texas long-arm
statute gives Texas courts the authority to exercise personal jurisdiction over
a non-resident defendant Adoing business@ within the state.  BMC Software, 83 S.W.3d at 795.  The statute describes activities that
constitute Adoing business@; however, the list is not exhaustive.  Id. 
Committing a tort in whole or in part in Texas constitutes Adoing business.@  See
id.  The broad language of section
17.042 of the civil practice and remedies code extends Texas courts' personal
jurisdiction as far as the federal constitutional requirements of due process
will permit.  Id.  Thus, a court may rely on precedent from the
United States Supreme Court and other federal courts, as well as the state
court's decisions, in determining whether due process requirements have been
satisfied in asserting personal jurisdiction. Id.

Personal jurisdiction over non-resident
defendants is constitutional when two conditions are met:  (1) the defendant has established minimum
contacts with the forum state; and (2) the exercise of jurisdiction comports
with traditional notions of fair play and substantial justice.  Id. 
Although not determinative, foreseeability is an important consideration
in deciding whether the non-resident defendant has purposefully established
"minimum contacts" with the forum state.  Id.  However, a defendant should not be subject to
a foreign court's jurisdiction based upon "random,"
"fortuitous," or "attenuated" contacts.  Id. (citing  Burger King Corp. v. Rudzewicz, 471
U.S. 462 (1985)).








The minimum contacts of a non-resident
defendant can give rise to either general or specific personal
jurisdiction.  Id.  General jurisdiction requires that the
contacts in Texas be continuous and systematic but does not demand that the
cause of action arise from or relate to activities conducted in Texas.  Id. at 796.  Specific jurisdiction is established when the
defendant's alleged liability arises from or is related to an activity conducted
within the forum.  Id. at 795.   The activity must be Apurposefully directed@ to the forum and the litigation must result
from injuries arising out of or relating to the activity.  See Guardian Royal Exch. Assurance, Ltd.
v. English China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991).  Moreover, the non-resident defendant=s contacts must be purposefully directed at
Texas in such a manner that the defendant could reasonably foresee being haled
into court within the state.  M.G.M.
Grand Hotel v. Castro, 8 S.W.3d 403, 408 (Tex. App.BCorpus Christi 1999, no pet.).  Single or even occasional acts are not
sufficient to support specific personal jurisdiction if their nature and
quality and the circumstances of their commission create only an attenuated
affiliation with the state.  Id.

If the non-resident defendant is found to
have sufficient minimum contacts with the forum, we then evaluate the contacts
in light of other factors to ensure that assertion of personal jurisdiction
comports with traditional notions of fair play and substantial justice.  Burger King, 471 U.S. at 476; Guardian
Royal, 815 S.W.2d at 228.  These
factors include (1) the burden on the defendant, (2) the interests of the forum
State in adjudicating the dispute, (3) the plaintiff=s interest in obtaining convenient and
effective relief, (4) the interstate judicial system=s interest in obtaining the most efficient
resolution of controversies, and (5) the shared interest of the several States
in furthering fundamental substantive social policies.  Burger King, 471 U.S. at 476; Guardian
Royal, 815 S.W.2d at 228.

                                                 1.  Specific Personal Jurisdiction

By their first point of error, appellants
contend the trial court erred in denying their motion to dismiss this case for
want of jurisdiction.  Appellants
challenge the following findings of fact made by the trial court:








2.         Robert G. Morris and Joyce M. Morris
have done business as Morris Genetics in Texas and in other states. . . .

 

6.         Robert G. Morris performs the surgeries
required during an embryo transfer program. 
Joyce M. Morris does embryology and does not perform any surgeries.  Robert G. Morris and Joyce M. Morris worked
together at all times while they were in Texas doing embryo transfer programs.

 

7.         Robert G. Morris and Joyce M. Morris
have performed services involved in the embryo transfer program in April and
September of 2001 for Kallie Kohls-York in Schleicher County, Texas and have
performed services involved in the embryo transfer program for Brenda Behring
in Gonzales County, Texas in April and October of 2001. . . .

 

8.         Robert G. Morris and Joyce M. Morris
have billed in Texas for their services and have been paid in the State of
Texas for such services.

 

12.       Robert G. Morris and Joyce M. Morris are
the only employees for Morris Genetics. . . .

 

15.       Brenda Behring had work done by Robert G.
Morris and Joyce M. Morris in Gonzales County, Texas in 1998.

 

16.       Brenda Behring had work done by Robert G.
Morris and Joyce M. Morris in 1998, 1999, and October, 2001. . . .

 

18.       Joyce M. Morris has performed work with
Robert G. Morris in the Spring and Fall of 2001 for Kallie Kohls-York and
Brenda Behring. . . .

 

21.       Robert G. Morris and Joyce M. Morris have
performed services on 9/25, 9/26, 9/27, 9/28, and 9/29 2001 in Schleicher and
Edwards Counties. . . .

 

26.       Robert G. Morris and Joyce M. Morris have
done programs in Texas in 1998, 1999, 2000 at the Morris [sic] Ranch in Sutton
County, Texas. . . .

 

28.       Robert G. Morris and Joyce M. Morris have
done programs in Texas for Plaintiff in April, September, and December of 2000,
and in April, September, and November of 2001 at the Schilling Ranch in Live
Oak County, Texas.

 








29.       Robert G. Morris and Joyce M. Morris have
worked for themselves.

 

30.       Robert G. Morris and Joyce M. Morris have
done programs in Texas before and after September 2001 for Kallie Kohls and
Norman Kohls.

 

31.       Robert G. Morris has provided embryo
transfer services in Cost, Texas on April 21, 2001, October 9, 2001, and
October 10, 2001. . . 

 

34.       Joyce M. Morris was present in Texas in
the Spring and Fall of 2001.

 

35.       Robert G. Morris has provided embryo
transfer services in between Eldorado, Texas and Fort McKavett, Texas on April
24, 2001, April 25, 2001, and September 23 and 24, 2001.

 

36.       Joyce M. Morris has provided embryo
transfer services in Cost, Texas on April 21, 2001, October 9, 2001 and October
10, 2001.

 

37.       Joyce M. Morris has provided embryo
transfer services in between Eldorado, Texas and Fort McKavett, Texas on April
24, 2001, April 25, 2001 and September 23 and 24, 2001.

 

Appellants also challenge the following
conclusions of law made by the trial court:

 

1.         Robert G. Morris and Joyce M. Morris
are non-residents of the State of Texas. 
Based upon the facts I have previously found, the Texas Long Arm Statute
authorizes Texas Courts to exercise personal jurisdiction over non-residents
[sic] defendants doing business in the State. 
Based upon the facts I have previously found, Robert G. Morris and Joyce
M. Morris as non-residents entered into contracts by mail or otherwise with a
Texas resident and the contracts were performed by Robert G. Morris and Joyce
M. Morris in whole or in part in the State of Texas.

 

2.         Robert G. Morris and Joyce M. Morris,
individually, have purposefully established minimum contacts and/or continuous
and systematic contacts with the State of Texas.

 

3.         [T]he exercise of jurisdiction over Robert
G. Morris and Joyce M. Morris comports with traditional notions of fair play
and substantial justice.

 

4.         Robert G. Morris and Joyce M. Morris
purposefully availed themselves of the privilege of conducting activities
within the State of Texas and invoked the benefits and protections of its laws.

 








5.         [T]he controversy between the Plaintiff
and Robert G. Morris and Joyce M. Morris arises out of their contacts within
the State of Texas. . . .

 

7.         [T]he fiduciary[-]shield doctrine does
not apply to the facts of this case as a basis for limiting Texas jurisdiction
over Robert G. Morris and Joyce M. Morris.

 

8.         Robert G. Morris and Joyce M. Morris
may be individually liable for fraudulent or tortuous [sic] acts committed
while in the service of Morris Genetics, L.L.C. and/or Morris Genetics.

 

9.         Robert G. Morris and Joyce M. Morris
knew or should have known that the brunt of the injury will [sic] be felt by a
resident or residents of the State of Texas and they knew or should have
reasonably anticipated being haled into Court to answer for their actions.

 

10.       Robert G. Morris and Joyce M. Morris
committed specific acts in Texas with reasonably foreseeable consequences
within Texas boundaries.

 

11.       Robert G. Morris=[s] actions in connection with his actions
in Texas based upon his Texas veterinary license are sufficient to establish
general jurisdiction over him.

 








Appellee, Beau Schilling, alleged the
following facts in support of the trial court=s jurisdiction over appellants:  (1) on or about September 17, 2001, November
27, 2001, and November 28, 2001, appellants came to the Schilling Ranch in Live
Oak County, Texas and performed veterinary and embryo transfer work on appellee=s Boer Goats for the purpose of obtaining up
to 101 Boer kids; (2) appellants transferred 152 Boer embryos over the same period;
(3) appellants performed similar embryo transfer programs on other ranches in
Texas during the same period and in previous years; (4) appellants represented
they had the necessary skill, license and experience to have a successful
embryo transfer program; (5) appellants represented that an estimated 101
pregnancies would occur from the embryo transfers; (6) appellants represented
that Robert was a skilled and licensed veterinarian and that Joyce was a
licensed and skilled embryologist; and (7) despite the represented pregnancies,
there were only ten pregnancies to term (live births) in this embryo transfer
program.

Appellants concede that they were physically
present in Texas for the purpose of performing embryonic transfers.  However, appellants claim that appellee=s allegations fail to recognize they were
performing their duties as employees of Morris Genetics, L.L.C., and not in an
individual capacity.  The main thrust of
appellants= argument is that they are protected
individually by the fiduciary-shield doctrine. We will first address appellants= activities in their respective individual
capacities.  See Shapolsky v.
Brewton, 56 S.W.3d 120, 132 (Tex. App.BHouston [14th Dist.] 2001, pet. denied)
(when there are multiple defendants, we test each defendant=s actions and contacts with the forum
separately).

Findings of fact 2, 7, 15, 16, 18, 21, 26,
28, 30, 31, and 35 refer to embryo transfer programs conducted in Texas by
Robert over a period of time.  Robert=s deposition testimony, as well as other
documented evidence contained in the record, supports these findings.  Robert testified he began performing embryo
services in Texas in November 1995, and continued to do such each year
thereafter.  His presence in the state
was not continual but scheduled periodically over the course of a few days or
weeks each fall and spring.  Robert said
he became licensed to practice veterinary medicine in Texas in August,
2000.  He also said that additional
embryo transfer programs were already scheduled in Texas for future dates.








Findings of fact 2, 7, 15, 16, 18, 21, 26,
28, 30, 31, 34, 36, and 37 refer to Joyce=s contacts with Texas.  The record shows that Joyce was physically
present in Texas on or about the specified dates to perform services as an
embryologist.  Joyce testified that she
would Acollect the embryos, evaluate them, handle
them, and then replace them back in.@  She
also testified that she and her husband, Robert, worked together on all embryo
transfer programs performed in Texas.

The evidence supports the trial court=s findings that appellants were physically
present in Texas and performed the transplant services that appellee alleged
gave rise to the claims against them. 
Appellants purposefully conducted a substantial amount of business in
Texas and it was reasonably foreseeable that they could be haled into court
within this state.  See M.G.M. Grand
Hotel, 8 S.W.3d at 408.  Because we
conclude appellants have sufficient minimum contacts with this state, we now
evaluate whether the assertion of personal jurisdiction comports with
traditional notions of fair play and substantial justice.  Burger King, 471 U.S. at 476; Guardian
Royal, 815 S.W.2d at 228.

Appellants have performed embryo transfer
programs in Texas every year since 1995, and Robert is a licensed veterinarian
in this state.  Other than their contacts
with Texas for business purposes, appellants have family in this state that
they visit regularly.  The assertion of
specific personal jurisdiction comports with traditional notions of fair play
and does not appear to overburden appellants.

As for the interests of Texas in
adjudicating the dispute, Texas has a heightened interest since the alleged
torts occurred in Texas and Texas residents are involved.  Appellants contend they performed all
services as employees of Morris Genetics, L.L.C.  However, corporate agents are individually
liable for fraudulent or tortious acts committed while in the service of their
corporation.  See Shapolsky, 56
S.W.3d at 133.








At this stage in the proceeding, we are not
charged with determining the merits of appellee=s allegations against appellants.  See Stern v. KEI Consultants, Ltd.,
123 S.W.3d 482, 489 (Tex. App.BSan Antonio 2003, no pet.).  Instead, we examine appellee=s allegations and then determine separately
whether the evidence establishes a substantial connection between appellants
and Texas.  Id.  In his deposition, Robert conceded that a
possible reason for the substantial percentage drop in successful births was
that he used a contaminated microscope. 
It is foreseeable that the use of a contaminated microscope to perform
embryo transfers on goats in Texas will cause harm to their respective
Texas-resident owners.  For this reason,
we conclude that a substantial nexus exists between appellants, Texas, and the
alleged tortious acts.

Accordingly, we hold the evidence is legally
and factually sufficient to support the trial court=s finding that it has specific personal
jurisdiction over both appellants.  We
overrule appellants= first point of error.

                                                     2.  Fiduciary-Shield Doctrine

By their second point of error, appellants
complain that the fiduciary-shield doctrine prohibits the trial court from
asserting personal jurisdiction over them.








The fiduciary-shield doctrine protects a
corporate officer or employee from the trial court=s exercise of general personal jurisdiction
when the individual=s contacts with Texas were on behalf of the
employer.  SITQ E.U., Inc. v. Reata
Rests. Inc., 111 S.W.3d 638, 650-51 (Tex. App.BFort Worth 2003, pet. dism=d); Brown v. Gen. Brick Sales Co., 39
S.W.3d 281, 297-98 (Tex. App.BFort Worth 2001, no pet.).  The fiduciary-shield doctrine has not been
expressly adopted by the Texas Supreme Court. 
Brown, 39 S.W.3d at 300. 
We note that the fiduciary‑shield doctrine has been applied only
to the exercise of general personal jurisdiction over a non-resident
defendant.  See id.  ("Where intermediate appellate courts
have applied some aspects of the fiduciary-shield doctrine, they have limited
its application to jurisdictional claims based on the theory of general
jurisdiction as opposed to specific jurisdiction.").  Moreover, the fiduciary‑shield doctrine
does not protect an employee from specific personal jurisdiction as to
intentional torts or fraudulent acts for which the employee may be held
individually liable.  SITQ, 111
S.W.3d at 651.

In Texas, a non-resident defendant must
negate all bases of personal jurisdiction to prevail in a special appearance.  See Kawasaki Steel Corp. v. Middleton,
699 S.W.2d 199, 203 (Tex. 1985).  Because
we have held that the trial court has specific personal jurisdiction over both
appellants, there is no need to evaluate general jurisdiction requirements or
further discuss the fiduciary-shield doctrine. 
Appellants= second point of error is overruled.

                                               B.  Sufficiency
of Pleadings

In their fourth point of error, appellants
contend there is no legal theory on which the trial court could assert personal
jurisdiction.  Appellants complain that
appellee failed to meet his burden of pleading allegations sufficient to
establish the trial court=s personal jurisdiction over them
individually.

The record does not contain a motion to
quash.  Because appellants did not file a
motion to quash, they waived any complaint that appellee failed to meet his
pleading burden.  See Kawasaki Steel
Corp., 699 S.W.2d at 203.  Therefore,
the burden shifted to appellants to negate all bases for the trial court=s exercise of personal jurisdiction.  See id.              We
have previously held, however, that the evidence is legally and factually
sufficient to support the trial court=s finding that it has specific personal
jurisdiction over both appellants. 
Accordingly, we overrule appellants= fourth point of error.








We affirm the trial court=s order denying the special appearances of
Robert G. Morris, D.V.M. and Joyce M. Morris.

 

FEDERICO G. HINOJOSA

Justice

 

 

Memorandum
Opinion delivered and filed this

the
30th day of August, 2005.











[1] Parties may challenge by
interlocutory appeal trial court=s orders regarding special appearances.  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(7) (Vernon Supp. 2004-05).  





[2] The Morrises have made similar
challenges to jurisdiction in other cases filed in Texas.  See Morris v. Powell, 150 S.W.3d 212,
217 (Tex. App.BSan Antonio 2004, pet. filed); Morris
v. Kohls-York, 164 S.W.3d 686, 690 (Tex. App.BAustin 2005, pet. filed).   





[3] Appellants have waived
review of their third issue, wherein they contend the evidence is  insufficient to support the trial court=s finding that they
committed an intentional tort, because they failed to direct this Court to such
a finding and failed to present a concise argument for this contention.  See Tex.
R. App. P. 38.1(h).  Furthermore,
when reaching a decision to exercise or decline jurisdiction based on the
defendant's alleged commission of a tort, the trial court should examine only
the necessary jurisdictional facts and should not reach the merits of the
case.  See EMI Music Mexico, S.A. de
C.V. v. Rodriguez, 97 S.W.3d 847, 856 (Tex. App.BCorpus Christi 2003, no
pet.).